IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:15-CV-247-D

| | |
|---|---|
| RICHARD JOHN PETERSON, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> NANCY A. BERRYHILL,[1] ) <br> Acting Commissioner of Social ) <br> Security, ) <br> ) <br> Defendant. ) | **MEMORANDUM & RECOMMENDATION** |

This matter is before the court on the parties' cross motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Richard John Peterson ("Plaintiff") filed this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the denial of his application for a period of disability and Disability Insurance Benefits ("DIB") benefits. The time for filing responsive briefs has expired, and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, the undersigned recommends that Plaintiff's Motion for Judgment on the Pleadings [DE #12] be granted, Defendant's Motion for Judgment on the Pleadings [DE #14] be denied, and the Commissioner's decision be remanded for further proceedings.

---

[1] Plaintiff's complaint names Carolyn W. Colvin in her official capacity as Acting Commissioner of Social Security as a defendant to this action. Nancy A. Berryhill is now the Acting Commissioner of Social Security and therefore is substituted as a defendant to this action. *See* Fed. R. Civ. P. 25(d).

## STATEMENT OF THE CASE

Plaintiff protectively filed an application for a period of disability and DIB on February 22, 2012, alleging disability beginning April 5, 2011. (R. 17, 165-71.) The application was denied initially and upon reconsideration, and a request for hearing was filed. (R. 59, 91-92, 114-15.) On February 19, 2014, a video hearing was held before Administrative Judge Marcus Christ ("ALJ"), who issued an unfavorable ruling on March 24, 2014. (R. 17, 25.) On September 16, 2015, the Appeals Council denied Plaintiff's request for review. (R. 1-3.) Plaintiff now seeks judicial review of the final administrative decision pursuant to 42 U.S.C. § 405(g).

## DISCUSSION

### I. Standard of Review

The scope of judicial review of a final agency decision denying disability benefits is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; [i]t consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)) (internal quotation marks and citation omitted) (alteration in original). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th

Cir. 2001) (quoting *Craig*, 76 F.3d at 589) (internal quotation marks omitted) (first and second alterations in original). Rather, in conducting the "substantial evidence" inquiry, the court determines whether the Commissioner has considered all relevant evidence and sufficiently explained the weight accorded to the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

## II. Disability Determination

In making a disability determination, the Commissioner uses a five-step evaluation process. The Commissioner asks, sequentially, whether the claimant: (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, App. 1; (4) can perform the requirements of past work; and, if not, (5) based on the claimant's age, work experience, and residual functional capacity can adjust to other work that exists in significant numbers in the national economy. *See* 20 C.F.R. § 404.1520; *Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th. Cir. 1995). At the fifth step, the burden shifts to the Commissioner to show that other work exists in the national economy that the claimant can perform. *Id.*

## III. ALJ's Findings

Applying the five-step, sequential evaluation process, the ALJ found Plaintiff "not disabled" as defined in the Social Security Act. At step one, the ALJ found Plaintiff had not engaged in substantial gainful employment since April 5, 2011, and

3

that he meets the insured status requirements through December 31, 2016. (R. 19.) Next, the ALJ determined Plaintiff had the following severe impairment: "neck/back disorders." (*Id.*) The ALJ also found that Plaintiff had the following non-severe impairment: hypertension. (*Id.*) However, at step three, the ALJ concluded that Plaintiff's impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*)

Prior to proceeding to step four, the ALJ assessed Plaintiff's residual functional capacity ("RFC") and found that Plaintiff had

> the residual functional capacity to perform light work (described as requiring lifting and carrying 20 pounds occasionally and 10 pounds frequently as well as an ability to stand, sit, and walk each for 6 hours in an 8-hour workday) with occasional climbing ropes/ladders/scaffolds and stooping, occasional overhead reaching and frequent handling and fingering. The claimant should avoid hazards such as unprotected heights and dangerous machinery.

(R. 20.) In making this assessment, the ALJ found Plaintiff's statements about the severity of his symptoms not fully credible. (R. 21.) At steps four and five, the ALJ concluded Plaintiff could not perform any past relevant work (R. 24), but could make "a successful adjustment to other work that exists in significant numbers in the national economy" and listed ticket taker, parking lot attendant, and storage facility clerk as potential occupations (R. 25).

## IV. Plaintiff's Contentions

### A. Treating Physician Rule and RFC

Plaintiff challenges the Commissioner's decision denying benefits on the grounds that the ALJ violated the Treating Physician Rule by failing to weigh properly medical opinions of his treating physician that appear in the record and that this error infected the RFC determination.

An ALJ "is required to evaluate all evidence in the case record that may have a bearing on the determination or decision of disability, including opinions from medical sources about issues reserved to the Commissioner." SSR 96-5p, 1996 WL 374183, at *3 (July 2, 1996). An ALJ must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." SSR 96–8p, 1996 WL 374184, at *7 (July 2, 1996).

As part of this consideration and explanation, an ALJ must evaluate all medical opinions in the record. 20 C.F.R §§ 404.1527(b)-(c), 416.927(b)-(c). Medical opinions are "statements from physicians . . . or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2).

A treating source is a "physician, psychologist, or other acceptable medical source who provides [the claimant], or has provided [the claimant], with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship

5

with [the claimant]." 20 C.F.R. § 404.1502. Controlling weight will be given to "a treating source's opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) [if it] is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Craig,* 76 F.3d at 590.

Some issues are not considered medical issues, and therefore an opinion by a treating source as to one of these issues is not given controlling weight. SSR 96-5p, 1996 WL 374183, at *2 (July 2, 1996) (listing examples of issues that are not medical issues and the determination of which is reserved for the Commissioner). If a treating source provides an opinion on an issue reserved to the Commissioner and the basis for this opinion is unclear, then "the rules require that [the Commissioner] make every reasonable effort to recontact such sources for clarification." SSR 96-5p, 1996 WL 374183, at *2 (July 2, 1996). "Treating source opinions on issues reserved to the Commissioner are never entitled to controlling weight . . . [but] must never be ignored." *Id.* at *2-*3.

If an ALJ determines that a treating physician's opinion is not entitled to controlling weight, he must then determine the weight to give the opinion by applying the following factors: (1) the length of the treatment relationship and the frequency of examinations; (2) the nature and extent of the treatment relationship; (3) the evidentiary support for the physician's opinion; (4) the consistency of the opinion with the record as a whole; and (5) whether the physician is a specialist in the field in

6

which the opinion is rendered. 20 C.F.R. §§ 404.1527(c)(2)–(5), 416.927(c)(2)-(5); *see also Parker v. Astrue*, 792 F. Supp. 2d 886, 894 (E.D.N.C. 2011).

The record indicates that Dr. Alfred Faust is an orthopedic surgeon who performed orthopedic neck/spine surgery on Plaintiff in April 2011 and November 2011. (R. 21, 634.) The record also indicates that Dr. Faust treated Plaintiff approximately each month from March 2011 through November 2012. (R. 628, 635-36.) In December 2012, Dr. Faust completed and signed a Spinal Impairment Questionnaire ("questionnaire") provided by Plaintiff's counsel and submitted a narrative letter ("letter") summarizing his treatment of Plaintiff to counsel. (R. 628-36.) The questionnaire contains a mix of clinical findings (R. 628-29; Pl.'s Mem. Supp. Mot. J. Pldgs. [DE #13] at 12) and opinions about Plaintiff's work abilities that could reasonably be considered, standing alone, to be non-medical opinions (R.628-29; Def.'s Mem. Supp. Mot. J. Pldgs. [DE #15] at 14-16). The letter contains a similar mix. (R. 634-36; Def.'s Mem. Supp. Mot. J. Pldgs. at 15-16.) Importantly, Dr. Faust indicated that Plaintiff could be expected to be absent from work more than three times per month due to his impairment; that Plaintiff would need to take unscheduled breaks of twenty-to-forty minutes in duration every fifteen-to-twenty minutes during an eight-hour workday; and that the underlying cause of Plaintiff's impairment is "nerve root compromise."[2] (R. 632, 635.)

---

[2] See "Nerve Root Disorders" in the MERCK MANUAL OF DIAGNOSIS AND THERAPY 1795-96 (Robert S. Porter & Justin L. Kaplan eds., 19th ed. 2011) for a general description.

The crux of the argument here concerns the proper weight to be given Dr. Faust's statements in these documents. Given that Dr. Faust, an orthopedic surgeon, performed two spinal surgeries on Plaintiff and saw Plaintiff on an almost monthly basis for nearly two years, he is a treating physician for purposes of the Social Security Act. *See* 20 C.F.R. § 404.1502. Therefore, his medical opinions as to the nature and severity of Plaintiff's impairments should be given controlling weight to the extent they are well supported by medically acceptable clinical and laboratory diagnostic techniques and they are not inconsistent with the other medical evidence. Here, the ALJ failed to consider whether Dr. Faust was a treating physician and, as a consequence, failed to consider whether Dr. Faust's opinion should be given controlling weight. The record also does not indicate whether the ALJ considered the factors identified in the regulations in determining the weight to be afforded Dr. Faust's opinions.[3]

Defendant argues that Plaintiff is requesting that the court "re-weigh[] the evidence and find that Dr. Faust's December 2012 opinions should be granted controlling weight." (Def.'s Mem. Supp. Mot. J. Pldgs. at 16.) That is not the issue. Rather, the issue here is whether the ALJ applied the correct legal standards in assessing Dr. Faust's opinions. Plaintiff's evidence below indicates that Dr. Faust was a treating physician, and there is no substantial evidence to the contrary. Thus, the court must consider whether the statements in his questionnaire and letter from

---

[3] A cursory analysis of these five factors indicates that at least three—length and frequency of treating relationship, nature and extent of treating relationship, and physician's specialization—would favor crediting Dr. Faust's opinions.

8

December 2012 constitute "medical opinions" deserving of special significance under the regulations. *See* SSR 96-5p, 1996 WL 374183, at *4 (July 2, 1996) (stating that treating physicians' "opinions about the nature and severity of an individual's impairment(s) are entitled to special significance").

There is a strong argument that Dr. Faust's statements are medical opinions, or, more precisely, medical source statements. *See* SSR 96-5p, 1996 WL 374183, at *4 (July 2, 1996) ("Medical source statements are medical opinions submitted by acceptable medical sources, including treating sources and consultative examiners, about what an individual can still do despite a severe impairment(s), in particular about an individual's physical or mental abilities to perform work-related activities on a sustained basis."). If Dr. Faust's statements are medical source statements, the ALJ should have given them controlling weight or provided an appropriate explanation why they were not entitled to controlling weight. The ALJ's failure to do so would, therefore, constitute reversible error.

However, even if the court were to accept Defendant's argument that Dr. Faust's statements are not "medical opinions" under the regulations and are, instead, mere opinions on issues the determination of which is reserved to the Commissioner (Def.'s Mem. Supp. Mot. J. Pldgs. at 17), these opinions cannot be ignored. While such opinions are not entitled to controlling weight or special significance under the regulations, the ALJ is required to consider the opinions and to make reasonable efforts to follow up with the treating physician if the bases for such opinions are not clear. *See* SSR 96-5p, 1996 WL 374183, at *4 (July 2, 1996).

The ALJ cited Dr. Faust's opinion that Plaintiff would "need to take a break every 15-20 minutes for 20-40 minutes before returning to work." (R. 23). The Vocational Expert ("VE") testified there would be no jobs available to someone who required a twenty-to-forty minute break from work every twenty minutes. (R. 46). Nevertheless, the ALJ concluded that Plaintiff could perform light work as a ticket taker, parking lot attendant, or storage facility clerk. (R. 24-25). Even assuming there was substantial evidence underlying his decision not to give Dr. Faust's opinion controlling weight, the ALJ was required to explain how he resolved the inconsistency posed by Dr. Faust's opinion regarding the need for breaks. *See* SSR 96–8p, 1996 WL 374184, at *7 (July 2, 1996).

The ALJ explained his reasons for discounting the evidentiary weight of Dr. Faust's opinions in the December 2012 questionnaire and letter as follows:

> I considered these opinions, but did not allow them significant evidentiary weight inasmuch as the medical evidence of record indicates that the claimant's condition improved after his second surgery. Moreover, Dr. Faust indicated in a February 2013 letter that the claimant's condition simply rendered him incapable of returning to his past, heavy, work (Exhibit 29F), which is congruent with the other medical evidence of record as well as the testimony of the vocational expert.

(R.23.) There are two flaws in this reasoning that make it impossible to conduct meaningful review of the ALJ's decision to discount Dr. Faust's opinions.

First, Dr. Faust's opinions in the December 2012 letter and questionnaire are not inconsistent with the ALJ's statement that "the medical evidence of record indicates that the claimant's condition improved after his second surgery." In fact, Dr. Faust's letter states that Plaintiff's condition improved after his second surgery.

10

("Surgery was performed twice. The symptoms improved but the persisting signs of nerve root compromise remained . . . I have had ample time to become fully aware of how he responded to treatment and what the future likely holds for him."). (R. 635-36.) A reason for discounting the weight of Dr. Faust's opinion cannot simply be that the medical evidence tended to show that Plaintiff's condition improved after his second surgery when, in fact, Dr. Faust's opinion is part of that medical evidence showing that Plaintiff's condition improved.

Second, even if Dr. Faust's February 2013 statement that Plaintiff could not return to work was intended, as the ALJ found, to mean only that Plaintiff could not return to his past "heavy" work, that does not contradict Dr. Faust's December 2012 statements about Plaintiff's work abilities and limitations. Those two statements are entirely consistent with one another. Therefore, Dr. Faust's February 2013 statements cannot be a reason for discounting his December 2012 statements,[4] and, *a fortiori*, cannot resolve the material inconsistency between Dr. Faust's assessment

---

[4] Defendant makes a similar mistake regarding the relationship between Dr. Faust's December 2012 statements and his February 2013 statements. Repeatedly, Defendant states that the December 2012 statements from Dr. Faust occurred shortly after the second surgery. (Def.'s Mem. Supp. Mot. J. Pldgs. at 14-15 (stating that "[t]wenty-two days after performing a second surgery . . . Dr. Faust completed a Spinal Impairment Questionnaire" and "[l]ess than a month after the second surgery, Dr. Faust opined 'he cannot perform full-time work in a normal, competitive work setting'").) The almost irresistible inference that Defendant urges the court to draw is that the credibility of Dr. Faust's December 2012 opinions is undermined by their proximity to the second surgery. This inference, however, depends on a premise that is factually incorrect according to the record—the second surgery occurred in November 2011, not November 2012, as Defendant states. One wonders if the ALJ made the same mistake.

11

of Plaintiff's work limitations, the VE's testimony that such work limitations would eliminate all jobs, and the ALJ's conclusion that there are jobs available to Plaintiff.

In sum, the ALJ erred by failing to classify Dr. Alfred Faust as Plaintiff's treating physician and by failing to accord his opinions proper weight under the regulations, either as medical opinions or as non-medical opinions on issues reserved to the Commissioner. The ALJ also failed to explain how he resolved the material inconsistencies between Dr. Faust's opinions—either medical or non-medical—and the RFC determination. Because of these errors, the undersigned is unable to determine whether the ALJ's RFC determination is supported by substantial evidence. Therefore, the case should be remanded to the Commissioner for further proceedings.

### B. Plaintiff's Credibility

Plaintiff also contends that the ALJ erred in assessing Plaintiff's credibility. In assessing a claimant's credibility, the ALJ must follow a two-step process. First, the ALJ must determine whether the claimant's medically determinable impairments could reasonably cause the alleged symptoms. *Craig*, 76 F.3d at 594–95. Next, the ALJ must evaluate the credibility of the claimant's statements regarding those symptoms. *Id.* at 595. The Social Security regulations require that an ALJ's decision "contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p, 2016 WL 1119029, at

12

*9 (Mar. 16, 2016). The Social Security Administration instructs its ALJs "to consider all of the evidence in an individual's record when they evaluate the intensity and persistence of symptoms after they find that the individual has a medically determinable impairment(s)." SSR 16-3p, 2016 WL 1119029, at *1 (Mar. 16, 2016). The ALJ must consider the following factors in addition to objective medical evidence when assessing the credibility of an individual's statements:

(1) Claimant's daily activities;

(2) The location, duration, frequency, and intensity of . . . pain or other symptoms;

(3) Precipitating and aggravating factors;

(4) The type, dosage, effectiveness, and side effects of any medication . . . taken to alleviate pain or other symptoms;

(5) Treatment, other than medication, received for relief of pain or other symptoms;

(6) Any measures used to relieve pain or other symptoms; and

(7) Other factors concerning functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) (2013); SSR 16-3p, 2016 WL 1119029, at *7 (Mar. 16, 2016).

The ALJ's credibility analysis is supported by substantial evidence. In the instant case, the ALJ's credibility analysis concludes that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that "the claimant's statements concerning the intensity, persistence

and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." (R. 21.) The ALJ explains:

> The claimant continued to complain of neck and shoulder/arm pain following the second surgery and Dr. Torres diagnosed him with cervical radiculopathy upon neurological exam in July 2012 (Exhibit 16F, page 3); however electrodiagnostic studies revealed no evidence of radiculopathy or brachial plexopathy to explain his signs and symptoms (Exhibit 16F, page 13). In addition, MRI performed in August 2012 was essentially unremarkable. (Exhibit 18F, page1)
>
> . . . .
>
> Dr. Blair reported in a letter authored in January 2014 that the claimant suffered from chronic intractable pain; however, he also noted that the claimant obtained relief and did really well while on Exalgo ER 8 milligrams on a daily basis.
>
> The claimant also testified as to medication side effects; however, he consistently reported to treating sources that he had not experienced any significant problems related to his medications . . . Dr. Blair, the claimant's treating family physician, reported in a February 2014 letter that the claimant had been tried on multiple opioid and non-opioid compounds without side effects. (Exhibit 27F) The claimant also testified that, despite his medical problems, he could maintain his self-care as well as perform some household chores (albeit at a slow pace).

(R. 21-22.) While the evidence as to the intensity, persistence and limiting effects of Plaintiff's impairments was not uncontroverted, there was substantial evidence for the ALJ to reach his credibility determination regarding Plaintiff's statements about his inability to work.

14

## CONCLUSION

For the reasons stated above, it is RECOMMENDED that Plaintiff's Motion for Judgment on the Pleadings [DE #12] be GRANTED, Defendant's Motion for Judgment on the Pleadings [DE #14] be DENIED, and the case be REMANDED to the Commissioner for further consideration.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on each of the parties or, if represented, their counsel. Each party shall have until **February 22, 2017**, to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his or her own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.,* 28 U.S.C. § 636(b)(l); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C.

A party that does not file written objections to the Memorandum and Recommendation by the foregoing deadline, will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, a party's failure to file written objections by the foregoing deadline may bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district

judge based on the Memorandum and Recommendation. *See Wright v. Collins*, 766 F.2d 841, 846-47 (4th Cir. 1985).

This 8th day of February 2017.

                                                                        _/s/ Kimberly A. Swank_  
                                                                   KIMBERLY A. SWANK  
                                                                   United States Magistrate Judge